JOURNAL ENTRY AND OPINION
{¶ 1} This is a consolidated appeal by the mother, S.S., from an order of Visiting Juvenile Judge Judith Cross that awarded permanent custody of her four children to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). She claims that the order is against the manifest weight of the evidence. We affirm.
 {¶ 2} From the record we glean the following: D.S. Jr. and S.S. were married in 1995, and their first daughter was born that May. Six months later, because they were homeless and living out of a car, they asked D.S. Jr.'s sister, T.H., to take their baby and, ultimately, filed a temporary custody agreement through probate court.
 {¶ 3} A little over a year later, the couple's second daughter was born and, because they remained homeless, she was also given to T.H., who raised the girls for almost three years until the parents took them back.
 {¶ 4} In 1998, following allegations of neglect, CCDCFS assigned social worker Michael Hilton to investigate the family. He found their home in deplorable condition, and evidence of domestic violence and alcoholism. Over the course of the next two years he conducted regular visits to the home, and developed a case plan that included a home aide, a visiting nurse, family protection, and alcohol assessments, in addition to domestic violence and parenting classes.
 {¶ 5} In February of 2000, S.S. gave birth to their third child, a boy, and four months later CCDCFS removed all three children from the home and filed a motion for temporary custody. The motion alleged numerous charges which included: ongoing domestic violence; alcoholism; violent behavior against both the children and S.S.; failure to provide a safe and appropriate environment by lack of permanent, stable housing; failure to provide basic medical needs, i.e, the children have been infested with lice; medical neglect of their hearing-impaired daughter by failing to treat her ear infections and allowing her to remain without her hearing aid for a period of days; and inappropriate discipline which included excessive "time-out" periods in their rooms.
 {¶ 6} Visiting Juvenile Judge Joseph Zieba granted temporary custody of the girls to their maternal grandparents, and the boy was placed with his paternal grandmother, where he remains today. The girls' placement was terminated after CCDCFS's discovery of allegations of neglect, physical abuse, and sexual abuse,[1] and they were then placed with T.H., and have remained in her custody.
 {¶ 7} Approximately six months after the motion for temporary custody was filed, CCDCFS filed a motion for permanent custody, and while this motion was pending, S.S. gave birth to a girl who was immediately removed and placed into foster care.
 {¶ 8} Hearings on the motions for permanent custody began in August of 2001, and were later consolidated to provide for all four children. After several hearings and numerous continuances, the judge entered an order granting CCDCFS permanent custody of all four children in June of 2003. S.S. asserts a single assignment of error set forth in the appendix to this opinion.
 {¶ 9} She claims that granting permanent custody to CCDCFS is against the manifest weight of the evidence and not in the best interest of the children because the record shows that she has attempted to complete the case plan.
 {¶ 10} R.C. 2151.414 sets forth a two-prong analysis to be applied by the juvenile court for a determination of whether permanent custody should be granted to an agency. The judge must find, by clear and convincing evidence: (1) the existence of one of the factors enumerated in R.C. 2151.414(B)(1), and (2) an award of permanent custody to be in the best interest of the child.[2]
 {¶ 11} Clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."[3] Judgments supported by competent credible evidence going to all the essential elements of the case will not be reversed on appeal.[4]
 {¶ 12} R.C. 2151.414 states in pertinent part:
{¶ 13} (B)(1) Except as provided in division (B)(2) of this section,the court may grant permanent custody of a child to a movant if the courtdetermines at the hearing held pursuant to division (A) of this section,by clear and convincing evidence, that it is in the best interest of thechild to grant permanent custody of the child to the agency that filedthe motion for permanent custody and that any of the following apply:
 {¶ 14} The child is not abandoned or orphaned or has not been in thetemporary custody of one or more public children services agencies orprivate child placing agencies for twelve or more months of a consecutivetwenty-two month period ending on or after March 18, 1999, and the childcannot be placed with either of the child's parents within a reasonabletime or should not be placed with the child's parents.(b) The child isabandoned.(c) The child is orphaned, and there are no relatives of thechild who are able to take permanent custody.(d) The child has been inthe temporary custody of one or more public children services agencies orprivate child placing agencies for twelve or more months of a consecutivetwenty-two month period ending on or after March 18, 1999.
 {¶ 15} Once the judge finds that any one of the conditions listed in R.C. 2151.414 exists, she must then determine, again by clear and convincing evidence, that permanent custody is in the best interest of the children, by considering the following criteria:
{¶ 16} (D) In determining the best interest of a child at a hearingheld pursuant to division (A) of this section or for the purposes ofdivision (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) ofsection 2151.415 [2151.41.5] of the Revised Code, the court shallconsider all relevant factors, including, but not limited to, thefollowing: (1) The interaction and interrelationship of the child withthe child's parents, siblings, relatives, foster caregivers andout-of-home providers, and any other person who may significantly affectthe child; (2) The wishes of the child, as expressed directly by thechild or through the child's guardian ad litem, with due regard for thematurity of the child; (3) The custodial history of the child, includingwhether the child has been in the temporary custody of one or more publicchildren services agencies or private child placing agencies for twelveor more months of a consecutive twenty-two month period ending on orafter March 18, 1999; (4) The child's need for a legally secure permanentplacement and whether that type of placement can be achieved without agrant of permanent custody to the agency; (5) Whether any of the factorsin divisions (E)(7) to (11) of this section apply in relation to theparents and child.[5]
 {¶ 17} In making her findings in support of permanent custody, the judge noted the following evidence:
{¶ 18} "1. Father has a chemical dependency problem that is so severethat it prevents him from providing the child with a safe and stablehome.
 {¶ 19} Parents have failed continuously and repeatedly tosubstantially remedy the conditions causing the child to be placedoutside the home.
 {¶ 20} Mother lacks stable housing.
 {¶ 21} The child has a significant bond with her caregivers.
 {¶ 22} The child is in need of a legally secure placement, whichcannot be achieved without a grant of permanent custody to CCDCFS."
 {¶ 23} S.S. contends that, contrary to the journal entry, she sufficiently complied with the case plan, she has remedied not only her apparent lack of stable housing but has also separated from the children's father making her "as good as divorced."
 {¶ 24} Contrary to her assertion, it is apparent that not only has she failed to sufficiently comply with any portion of the case plan, she has continually offered excuses for her failure to do so, and has medically neglected her children to the point that two of her children now suffer permanent hearing loss, and the three children that were in her custody at some point during their lives suffer from emotional trauma. The only child who has not suffered from medical or emotional neglect was removed from her care at birth.
 {¶ 25} There was testimony that CCDCFS filed numerous case plans for the parents requiring them to find permanent housing and employment, attend psychological and domestic violence counseling, attend parental education classes, and obtain substance abuse assessments, yet none of these requirements were sufficiently fulfilled.
 {¶ 26} To comply with her case plan, S.S. attended three parenting classes and two domestic violence classes, but was required to retake the courses after she received reviews stating that she was minimally compliant and that it did not appear she was an active participant in the classes. She testified that, although some social workers stated that she had difficulty in her parenting classes and that individual counseling has been recommended, she had attempted to get this counseling, but lacked the financial ability and necessary insurance to obtain it. Time constraints, she contended, prevented her attending free counseling through Catholic Charities.
 {¶ 27} Moreover, since her children have been in the custody of CCDCFS, S.S. had neglected to find stable, suitable housing, and lived in fifteen different residences. On at least one occasion, she informed the children's Guardian Ad Litem that they would be living in a pop-up trailer in Southern Ohio that lacked a bathroom or refrigerator and had only a one-burner stove.
 {¶ 28} She claimed to now have stable housing at her boyfriend's parents' residence, but could not provide CCDCFS with either a lease agreement or with cancelled checks, contending that her bank did not return her cancelled checks.[6] She also testified that she did not want to rent a one-bedroom apartment for fear that the CCDCFS would not return her children but, conversely, did not want to rent a three-bedroom apartment in the event that she did not get her children back.
 {¶ 29} In addition to a lack of appropriate housing, the children were found to be medically neglected. The eldest girl was diagnosed with Post Traumatic Stress Disorder, which was triggered by visitations with her parents, causing her extreme trauma and anxiety, including violent behavior and soiling herself after visitations, and also exhibited symptoms of not being fed on a regular basis. The second girl is hearing impaired because of several untreated ear infections, and also suffered from severe emotional distress which resulted in her hoarding food; again, a symptom of a child who has not been fed regularly. The boy is also hearing impaired because of the same medical neglect for his numerous ear infections, and requires the use of hearing aides. A social worker discovered his hearing aids thrown in the garbage by the parents during one of their multiple moves. The youngest child has severe digestive problems and is unable to digest proteins and requires a special diet, a diet which S.S. had routinely ignored by feeding her inappropriate foods during visitations.
 {¶ 30} In addition to these physical problems, the three oldest children are developmentally delayed, and the two that are hearing impaired must learn sign language to communicate properly, but are currently receiving the proper training through special education classes and in their foster homes.
 {¶ 31} When asked about her intent to divorce from her alcoholic and abusive husband, S.S. claimed that she is "as good as divorced" because of their separation, that she could not file for divorce because she lacked sufficient funds or, alternatively, that she did not understand how to complete the "Divorce kit" that she purchased from Office Max.
 {¶ 32} In terms of employment, S.S. argues that she has consistently maintained some type of employment since the inception of the case plan, with only brief periods of unemployment. Contrary to her testimony, however, the record shows varied and inconsistent employment, often terminating after a few weeks, although she contended each termination resulted from harassment by her husband, her in-laws, or various management personnel.
 {¶ 33} S.S. also submitted to two psychological evaluations, both of which found her to be passive aggressive, that she suffers from ongoing denial and minimization, and that she was immature, indulgent, had a poor work history, and portrayed herself as a victim of circumstances.
 {¶ 34} Following numerous complaints by S.S. that her social worker had a bias against her, social worker Maria Santana was then assigned to the case, yet S.S. still failed to make sufficient progress toward completion of her case plan. As of the last permanent custody hearing on April 2, 2003, S.S. was still without suitable housing and had only recently obtained a job as an exotic dancer.
 {¶ 35} The children's father repeatedly refused any effort to comply with the case plan, and was diagnosed twice with needing in-patient alcohol dependency treatment. He was consistently absent from visitation and court proceedings, displayed no desire to reunite with his children, and moved to Southern Ohio, making placement with him both unsuitable and impossible.
 {¶ 36} The evidence overwhelmingly supports that the proper placement of these children is in the permanent custody of CCDCFS. The evidence shows that S.S. could not hold a job, could not medically care for her children, and could not provide a stable environment for them, much less for herself. Moreover, throughout the numerous proceedings, the children's Guardian ad Litem repeatedly recommended that the judge award permanent custody to CCDCFS, further stating that there had been a clear breach of responsibility on the part of both of the parents, and noting that the children were in good placements, adding stability to their lives.
 {¶ 37} The judge's determination under the criteria set forth in R.C.2151.414(D) supports the conclusion that permanent custody is in the best interest of the children. Custody has been continuous since the children's placement in June of 2000, and by the continuous custody of the youngest since June of 2001. The record contains clear and convincing evidence that the award of permanent custody was in the best interest of the children. S.S.'s sole assignment of error lacks merit.
Judgment affirmed.
 APPENDIX A "I. The juvenile court committed error to the prejudice of appellantcontrary to the manifest weight of the evidence in determining a grant ofpermanent custody to ccdcfs to be in the best interest of the children."
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and McMonagle, J., concur.
[1] The record also contains other reasons for removal, including the grandparents' repeated requests to remove the children as it was "too stressful" to have them in the home, and allegations of domestic violence by the maternal grandfather.
[2] In re: Sarah S. (August 11, 2003), Erie App. Nos. E-02-052, E-02-053, E-02-054, 2003-Ohio-4730.
[3] Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 481 N.E.2d 613.
[4] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.
[5] R.C. 2951.414(D).
[6] The record currently shows that since the permanent custody hearing, she has left this last residence as well.